Filed 1/14/14  P. v. Gatison CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057097 |
| v. | (Super.Ct.No. FCH1100379) |
| JOHNNIE JOSEPH GATISON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Gerard S. Brown, Judge.  Affirmed as modified.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and James D. Dutton and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I. INTRODUCTION

Defendant Johnnie Joseph Gatison appeals from his conviction of battery by a prisoner on a nonconfined person (Pen. Code,[1] § 4501.5, count 1).[2] He contends he is entitled to presentence custody credits for the days the parole revocation sentence he was serving at the time he committed the current offense was extended due to the current offense. He also contends his $240 restitution and parole revocation fines should be reduced to the statutory minimum of $200 because the trial court failed to exercise discretion in imposing the fines.

# II. FACTS AND PROCEDURAL BACKGROUND

In 2010, defendant was serving a sentence at California State Prison on a parole violation; his release date was July 14, 2011. Defendant committed a battery on a correctional officer at the prison (§ 4501.5, count 1) on November 23, 2010. At a Board of Parole Hearing (BPH), it was found that defendant's conduct had violated prison rules, and his parole revocation sentence he was serving was extended by 180 days.

On April 2, 2012, an information was filed charging him with both counts, and a jury found him guilty as charged. Defendant admitted two prison priors (§ 667.5, subd. (b)).

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Defendant was also convicted of a misdemeanor violation of resisting an executive officer on January 23, 2012, while confined in county jail (§ 69, count 2). He does not raise any issue related to that conviction.

Before sentencing, defendant, who represented himself in propria persona, moved for presentence credits for the time he spent in custody after July 14, 2011, arguing he would have been released on that date but for the parole revocation sentence imposed for the same conduct underlying the current offense. The People opposed the motion on the ground that section 4501.5 mandated a consecutive sentence, so that defendant's sentence for that offense could commence only after completion of his parole revocation sentence on January 10, 2012. In their opposition to that motion, the People argued: "Defendant was already an incarcerated inmate serving time in state prison when he attacked and battered correctional officer, Nathan Lomeli, on November 23, 2010. *As a result of the crime committed by Defendant while serving his prison term*, Defendant appeared at an administrative Board of Parole Hearing . . . . At that hearing, Defendant was found to be in violation of the prison rules, and his prison term was extended an additional 180 days consecutively from his earlier release date." (Boldface & underscore omitted; italics added.) The People provided the declaration of Amanda Thompson, a correctional officer for the California Department of Corrections and Rehabilitation (CDCR) and the investigating officer in the case, as follows:

"3. As part of my duties in this case, I have reviewed the prison records of Defendant in order to determine and confirm his custody credits that he is entitled to. Defendant's prison records are kept by CDCR in the ordinary course of business, and I have reviewed his records to determine his custody credits as follows:

"a. Defendant was arrested for a parole violation on July 14, 2010.

3

"b. As a result of the parole violation, Defendant was subsequently returned to the custody of the California State Prison to serve one (1) year 'flat,' which means he would serve one (1) year in prison custody without any credits. Based on this finding by the CDCR, Defendant's Revocation Release Date ('RDD') was July 14, 2011.

"c. On November 23, 2010, Defendant committed the crime of Battery on a Non-confined Person by Prison[er], in violation of Penal Code § 4501.5. As a result of this crime, Defendant appeared in fr[ont] of an administrative Board of Parole Hearing ('BPH'). At that hearing, Defendant was found to be in violation of the prison rules, which resulted in his prison term extended 180 days 'flat' **consecutively** from his earlier-stated release date. Because Defendant received 180 additional days for his prison violation, his new release date calculated by the CDCR was **extended to January 10, 2012**. This meant that Defendant's prison discharge date was extended 180 days to January 10, 2012, regardless of what happened in his subsequent court hearing in case number FCH1100379. . . .

"4. Because Penal Code § 4501.5 mandates a **consecutive** sentence, Defendant would not be entitled to earn credits in FCH1100379 until **after he was discharged from his existing prison term**, which expired on January 10, 2012. Thus, any custody credits Defendant is entitled to in FCH1100379 would not start accruing until January 11, 2012." (Original boldface & underscore; italics omitted.)

After a hearing, the trial court held that sections 2900.5, 1170.1, subdivision (c), and 4501.5, when read together, required consecutive sentencing on the current offense, and that custody credits would accrue beginning January 11, 2012. The trial court

4

therefore awarded 246 days of actual custody credit and 246 days of conduct credit, calculated from January 11, 2012, to the date of sentencing, September 12, 2012.

The trial court sentenced him to the middle term of three years on count 1, a consecutive one-year term for each of the two prison priors, and a concurrent term of 180 days in county jail on count 2. The trial court imposed a $240 restitution fine (§ 1202.4) and a $240 parole revocation fine (§ 1202.45) (stayed pending successful completion of parole).

### III.  DISCUSSION

**A.  Custody Credits**

Defendant contends he is entitled to presentence custody credits for the days the parole revocation sentence he was serving at the time he committed the current offense was extended due to the current offense.

Section 2900.5 provides:

"(a) In all felony and misdemeanor convictions . . . when the defendant has been in custody . . . all days of custody of the defendant . . . shall be credited upon his or her term of imprisonment . . . .

"(b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. . . .

"(c) For the purposes of this section, 'term of imprisonment' includes . . . any period of imprisonment prior to release on parole and any period of imprisonment and

5

parole, prior to discharge, whether established or fixed by statute, by any court, or by any duly authorized administrative agency." (§ 2900.5, subds. (a)-(c).)

In *People v. Bruner* (1995) 9 Cal.4th 1178 (*Bruner*), the court held that "when one seeks credit upon a criminal sentence for presentence time already served and credited on a parole or probation revocation term, he cannot prevail simply by demonstrating that the misconduct which led to his conviction and sentence was 'a' basis for the revocation matter as well." (*Id.* at p. 1194.) Instead, as "a general rule . . . a prisoner is not entitled to credit for presentence confinement unless he shows that the conduct which led to his conviction was the sole reason for his loss of liberty during the presentence period." (*Id.* at p. 1191.) Stated another way, "where a period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited is also a 'but for' cause of the earlier restraint." (*Id.* at pp. 1193-1194) He must "show[] that he could have been free during any period of his presentence custody but for the same conduct that led to the instant conviction and sentence . . . ." (*Id.* at p. 1195.) In *Bruner*, the defendant's revocation of parole was based not only on the cocaine possession for which he was convicted and sentenced, but also on a credit card theft and absconding from parole supervision. (*Id.* at p. 1181.) Thus, the court held, he failed to show that he would have been free from custody "but for" the cocaine possession.

Here, the People argue as follows: "As indicated in the [BPH] findings, [defendant's] parole was revoked because he violated prison rules by committing assault

6

on a peace officer. . . . Certainly, during the November 23 incident, [defendant] was physically resistant and aggressive, and pushed and shoved a correctional officer before he hit the officer in the face once or twice with his fist. . . . [¶] Any one of these actions would have constituted an assault on the officer. Thus, [defendant] cannot show that a single act of battery that led to his battery on a non-confined person while in prison conviction in the current case was the sole reason for his loss of liberty during the presentence period. [Citation.]"

We find that argument disingenuous, particularly because the People never raised it in the trial court; rather, the People merely argued that defendant's sentence for his current conviction was required to be served consecutively to his parole revocation sentence. The People *expressly conceded* that "[a]s a result of the crime committed by Defendant while serving his prison term," he had a hearing before the BPH, was found to be in violation of the prison rules, and his prison term was extended. CT 273} At the hearing on defendant's motion, the prosecutor argued that when defendant was in prison for a parole violation, "he commit[ted] a new crime in prison, and they extend[ed] the time for his release based on his new crime. Now he's being sentenced on the new crime. And that is consecutive to whatever release date he would have had which includes the extension for 180 days consecutive to the time that he would have been in prison for."

The People rely primarily on *People v. Stump* (2009) 173 Cal.App.4th 1264 (*Stump*), in which the court held that the trial court did not err in denying the defendant credit for time he served in parole revocation custody. The defendant was on parole when he was arrested and charged with driving under the influence of alcohol with a

7

prior felony within 10 years and driving with a blood-alcohol content of .08 percent or higher with a prior felony within 10 years. As a result of the incident, his parole was revoked. (*Id.* at p. 1266.) The Department of Corrections and Rehabilitation found that defendant had "violated the terms of his parole in three ways: (1) by driving under the influence of alcohol/drugs; (2) by violating the special condition prohibiting alcohol consumption; and (3) by violating the special condition prohibiting the operation of a motor vehicle without a parole officer's approval." (*Id.* at p. 1267.) The defendant pleaded guilty to driving under the influence of alcohol with a blood-alcohol content over .08 percent. The trial court denied custody credits after concluding that the defendant had not shown that he would have been free of custody "but for" his conduct of driving under the influence, and the appellate court affirmed. (*Id.* at pp. 1266-1267.) The court held that even despite the drunk driving charges, the defendant violated the terms of his parole by driving without his parole officer's approval and by consuming alcohol. (*Id.* at p. 1272.)

Stump is easily distinguishable because in that case the Department of Corrections and Rehabilitation determined that the defendant violated his parole in three ways. (*Stump*, *supra*, 173 Cal.App.4th at p. 1267.) No such determination appears in the record before us. Instead, the People assert, without citation to the record or to other authority, that defendant's conduct violated "other prison rules" and his attack constituted not only a battery but also an assault or that his extended parole revocation sentence could have been based on a shove while the battery conviction was based on a blow. However, only one basis was established for extending defendant's parole revocation sentence, and that

8

basis was his attack on a correctional officer while a prison inmate. Defendant has satisfactorily demonstrated that "but for" that attack, he would have been free of custody after July 14, 2011, and he is therefore entitled to custody credits after that time.

### B. Restitution and Parole Revocation Fines

Defendant contends his $240 restitution and parole revocation fines should be reduced to the statutory minimum of $200, which was in effect when he committed his crimes, because the trial court failed to exercise discretion in imposing the fines.

Section 1202.4, subdivision (a)(3) requires the sentencing court to impose a restitution fine on a criminal defendant. Effective January 1, 2012, the statutory minimum fine was set at $240. (§ 1202.4, subd. (b)(1); Stats. 2011, ch. 358, § 1; *People v. Kramis* (2012) 209 Cal.App.4th 346, 350, fn. 2 (*Kramis*).) Before that, the statutory minimum was $200. (*Kramis*, *supra*, at p. 350.) The trial court has discretion to impose a restitution fine in an amount between the statutory minimum and maximum, "'commensurate with the seriousness of the' crime of which the accused has been convicted. [Citation.]" (*Ibid.*) The minimum fine is calculated as of the date of the offense. (*People v. Souza* (2012) 54 Cal.4th 90, 143-144.)

Defendant argues that the trial court's imposition of a $240 restitution fine (the statutory minimum at the time of sentencing (September 12, 2012) rather than at the time of the offense (November 23, 2010)) did not reflect an individualized exercise of discretion but rather a routine or standard practice of imposing a preconceived fine. He contends the trial court did not realize it had discretion to impose a minimum fine of $200. "Failure to exercise a discretion conferred and compelled by law constitutes a

denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal. [Citations.]" (*People v. Penoli* (1996) 46 Cal.App.4th 298, 306.)

Here, the trial court merely stated, "I will impose a court security fee of $80 criminal conviction fee of $60 restitution fine of $240, all to be collected by the Department of Corrections. Additional restitution fine of $240 stayed pending successful completion of parole." Although the trial court did not indicate any intent to impose only the statutory minimum fine, we do not presume that the trial court misunderstood its discretion from the silent record. Rather, we "indulge in every presumption to uphold a judgment, and it is [the] defendant's burden on appeal to affirmatively demonstrate error . . . ." (*People v. Garcia* (1987) 195 Cal.App.3d, 191, 198.)

Defendant further notes that section 1202.4, subdivision (b)(2) provides: "In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine . . . multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." He posits that because the trial court did not employ that statutory formula, which would have led to a fine of $1,000 (a minimum fine of $200 for his felony conviction multiplied by five (the number of years of his sentence), the court demonstrated it misunderstood the applicable statutory minimum.

We disagree. Section 1202.4, subdivision (b)(2) provides a formula the trial court "may" use, not a required method of calculating the fine. If the formula were required, the language of section 1204.4, subdivision (b)(1), which authorizes the fine to "be set at the discretion of the court and commensurate with the seriousness of the offense," would

10

be rendered essentially meaningless.  The trial court's failure to apply the statutory formula did not demonstrate any misunderstanding of the scope of its discretion.

## IV.  DISPOSITION

The trial court is directed to correct defendant's presentence custody credits to include the time he spent in custody between July 15, 2011, and January 10, 2012, to issue a new abstract of judgment reflecting the same, and to forward the corrected abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

          HOLLEHORST
                     J.

We concur:

    RAMIREZ
           P.J.

    CODRINGTON
           J.